(40 App. Div. 502.)

DENENFELD v. BAUMANN et al.

(Supreme Court, Appellate Division, First Department. May 19, 1899.)

No. 1275.

1. PERSONAL INJURY—DISMISSAL OF COMPLAINT—OPENING STATEMENT.
    In an action against a landlord and his tenants for a personal injury to an employé of the tenants, caused by the fall of an elevator in the leased premises, plaintiff's counsel, in his opening statement, distinctly asserted that it fell solely because it was overloaded by the tenants' employés, and according to his statement the whole case depended on that fact. *Held,* that the complaint was thereafter properly dismissed as to the landlord.

2. NEGLIGENCE OF FELLOW SERVANT—MASTER'S LIABILITY.
    A laborer was engaged, with others, in loading a freight elevator, and was injured when the elevator fell because overloaded by direction of one of them, who had control of the work. It did not appear that they were furnished with improper or unsafe machinery, or that the one whose negligence caused the injury was unfit for his employment. *Held,* that the injury was caused by the negligence of a fellow servant, and that the master was not liable therefor.

Appeal from trial term, New York county.

Action by Bernard Denenfeld against Ludwig Baumann and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

M. A. Sachs, for appellant.
W. H. Shepard, for respondents.

PATTERSON, J. This action to recover damages for personal injuries, caused to the plaintiff by the falling of an elevator, was originally brought against Thomas C. Lyman, the owner of a building in which the elevator was operated, and Baumann & Froehlich, his tenants. The complaint charged both the landlord and tenants with negligence; that of the former consisting, according to the allegations of the complaint, in neglecting to furnish the plaintiff with reasonably safe and proper machinery in operating and running the elevator, and in failing to employ skillful and competent engineers and servants to operate it, and by reason of his failure to give the plaintiff notice or warning that the elevator and engine attached thereto were in an unsafe and improper condition. The negligence attributed to Baumann & Froehlich, who were the plaintiff's employers, according to the complaint, was in failing and neglecting to furnish the plaintiff with a reasonably safe and proper place in which to prosecute his work, and in failing to give the plaintiff any notice or warning that the elevator in which the plaintiff was ordered to prosecute his work

was in an unsafe and improper condition, and by reason of the incompetency of the servants and agents of the defendants Baumann & Froehlich. The plaintiff and seven or eight other men put upon the elevator a mass of material, and were being drawn up with it, when the car fell, and the plaintiff was injured. On the trial, the plaintiff's counsel, in his opening to the jury, stated facts upon which he relied to recover against both defendants. What he stated to the jury is set forth in full in the record. After the opening, a motion was made to dismiss the complaint as to Mr. Lyman, which motion was granted, and the action of the court in so granting it presents the first question to be considered on this appeal.

In the statement of counsel to the jury, the allegations of the complaint respecting the cause of the accident and the relation of Lyman thereto seem to have been entirely abandoned. Counsel stated the facts to be, so far as Lyman was concerned, that the "elevator was operated by Mr. Lyman or his employés,—that is to say, the engineer who started the machinery going,—and supplied the power to the elevator," and "the elevator itself was run by the employés of the defendant Baumann." All that was claimed, therefore, with reference to Lyman, was that his engineer started the machinery, and that the power to move it was supplied by Lyman. Counsel then proceeded to state that this elevator was constructed with a carrying capacity of 4,500 pounds; that Baumann & Froehlich's servants placed upon it a load weighing between 7,500 and 8,000 pounds, and he distinctly asserted that, "as the result of that negligence, this elevator fell, and the falling of the elevator caused the injuries complained of." He also said, "We will show by the experts that this overloading was the cause of the elevator falling." It will be observed that there was nothing claimed nor suggested in the way of proof against Mr. Lyman to bear out any one of the allegations of the complaint concerning negligence attributable to him. The whole case was made to depend upon the single central fact of the overloading of the elevator, chargeable to the servants of the tenant, and in no way connected with the defendant Lyman, or his servants or employés. Dismissals of complaints upon the opening of counsel are not to be encouraged, but, as was said in Garrison v. McCullough, 28 App. Div. 468, 51 N. Y. Supp. 128, there are cases in which the court is not only empowered to adopt that course, but such course is entirely proper. Oscanyan v. Arms Co., 103 U. S. 261; Ward v. Jewett, 4 Robt. 714. It would have been, in this case, a useless consumption of time to continue a trial against a defendant who could not, by any possibility, be held liable on the proof to which counsel declared, in substance, he would confine himself. The trial proceeded as to the defendants Baumann & Froehlich, and upon the conclusion of the testimony offered by the plaintiff the complaint was dismissed as to them. It was shown that the overloading of the elevator caused the accident, and that that overloading was directed by one Nole, who was called a foreman, and who seems to have had direction and control of the work the plaintiff and other laborers working with him were doing when the accident occurred. It was shown that the cause of the accident was Nole's negligence. There is evidence from which the conclusion could have

been drawn that the plaintiff knew the elevator was overloaded, and that with that knowledge he assumed the risk of going upon it in that condition; but, irrespective of that question, and without further reference to it, it was sufficiently proven that Nole was only a fellow servant of the plaintiff, and that the negligence was that of a fellow servant, and not of a person standing in the relation of a representative of Baumann & Froehlich. Nothing is to be assumed as fixing a relationship from the name given to the person whose negligence caused the injury. He may be called a foreman, or a superintendent, or by any other name. The liability of the master, as is declared in Crispin v. Babbitt, 81 N. Y. 521, depends upon the character of the act in the performance of which the injury arises, without regard to the rank of the employé performing it. "If it is one pertaining to the duty a master owes to the servants, he is responsible to them for the manner of its performance. The converse of the proposition necessarily follows. If the act is one which pertains only to the duty of an operative, the employé performing it is a mere servant; and a master, although liable to strangers, is not liable to a fellow servant for its improper performance." In this case there is no evidence as to improper or unsafe machinery or implements, or that Nole was an unfit servant to employ in and about the elevator. In Slater v. Jewett, 85 N. Y. 74, the rule laid down in Crispin v. Babbitt, supra, was reiterated, and it was again declared that, if the act were something relating to the duty of an operative only, the employé performing it was a mere servant; and in Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, it is said that the rule in Crispin v. Babbitt remains in full vigor and force. That rule is again stated in Hankins v. Railroad Co., 142 N. Y. 420, 37 N. E. 466. In the case at bar the master's duty was to provide a proper elevator,—one that would be safe with proper and reasonable use. That duty was performed. Further, there is nothing to show that Nole was an incompetent person, or that there was any fault imputable to Baumann & Froehlich in employing him. It cannot be pretended that a master must stand by, and himself personally supervise the loading and unloading of a freight elevator every time it is used by his servants in his business. The fall of this elevator was caused by the overloading by Nole. It was an act done only in the performance of work which Nole and the others were employed to do, and for the manner in which they performed their own work the master cannot be liable. As was remarked in Cullen v. Norton, supra, the manner of the performance of each of the various details of work by which, as a whole, the work is to be carried on, rests necessarily on the intelligence and care and fidelity of the servants to whom those details are intrusted; and this accident was connected with "a detail of the working or management of the business, the risks attending which have been assumed by the party taking employment."

The judgment appealed from should be affirmed, with costs. All concur.