THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ALBERT B. CORY, Defendant.

County Court, Kings County, March 9, 1925.

Crimes — larceny — motion to dismiss indictment charging larceny for failure to show facts sufficient to constitute crime of larceny and upon opening of district attorney — defendant took title to goods and chattels and collected debts for benefit of creditors and failed to pay over moneys to said creditors — promise to execute trust is not false pretense — count in indictment charging crime of obtaining property by false pretense insufficient — second count in indictment charged larceny in common-law form — district attorney upon opening declared that title had passed to defendant — proof of commission of crime of obtaining money by false pretense does not authorize conviction under indictment charging common-law larceny — admission of district attorney upon opening conclusive — indictment dismissed with leave to district attorney to renew.

A count in an indictment charging the defendant with obtaining property by a false pretense will be dismissed as not setting forth facts sufficient to constitute the crime charged, where it appears that the defendant took title to certain goods and chattels and uncollected debts of the complainant for the benefit of said complainant's creditors and failed to pay over to said creditors the moneys he had collected, since defendant's promise to faithfully execute his trust is not a false or fraudulent pretense but rather is promissory only and will not sustain a criminal charge of obtaining money or property by false pretense. Moreover, the count is insufficient in that it does not set forth any material false statement concerning any existing fact, or any fact, past or present.

The second count in the same indictment which set up larceny in the common-law form cannot be sustained by proof upon the complainant's part that a general assignment was induced by false and fraudulent representations, since proof of the commission of the crime of obtaining money by false pretense, which constitutes statutory larceny, will not authorize a conviction under an indictment charging common-law larceny. Moreover, the second count should be dismissed upon the opening of the district attorney in which he stated that title had passed to the defendant.

Accordingly, defendant's motion to dismiss the indictment should be granted with leave to the district attorney to submit the case to another grand jury under section 1302 of the Penal Law.

Admissions of counsel are conclusive whether made by the district attorney or the attorney for the accused.

MOTION for dismissal of an indictment for grand larceny in the first degree.

*Charles J. Dodd, District Attorney* [*Edward J. Wynne, Assistant District Attorney*, of counsel], for the People.

*Smith, Reiher & Griffin* [*Peter P. Smith* of counsel], for the defendant.

McLaughlin, J.:

The case was moved for trial. A jury was impaneled and sworn. The district attorney made his opening address to the jury as follows: " May it please the Court, Mr. Foreman and Gentlemen of the Jury. I am going to be very brief in my opening to you because I am going to let the witnesses tell their story in their own way; but in order to give you some idea of the facts as they will present themselves as the case goes on I will make a brief opening to you. The defendant in this case, Albert B. Cory, was a credit manager in the employ of Austin, Nichols & Company. He was in their employ for approximately eight or ten years, and he had charge of all the credit work that Austin, Nichols & Company had to do with these retail concerns about the city here. In other words, when people purchased goods on time from Austin, Nichols & Company, he was in charge and saw that the money was collected for goods that were purchased by these retail concerns throughout the city. In the month of January, 1920, a man by the name of Edwin D. Osborne was running a retail grocery store at No. 212 Fulton street, in this borough of ours, and while he was running this store, business was not flourishing with him and he was in debt, and one of the people to whom he owed money was Austin, Nichols & Company, and he owed them in the neighborhood of eight hundred and some odd dollars. While this man was running his business, one day a man came into his store who was in the employ of Austin, Nichols & Company, and he said to Mr. Osborne: ' You better go over and see Cory and assign your business to him, because if you don't you are going to be in a frightful jam,' and Osborne, a poor, illiterate fellow, just happening to run a little grocery store, heeded this man's warning, as he thought. He got into a machine and went to Austin, Nichols' place, and when he got over there he had a conversation with Cory, and Cory told him to make a general assignment of his business, and he said: ' I will see all the debts you owe are paid, and I will make an accounting to you and inform you as to what you have after all the debts are paid.' This man, foolhardy-like, in Austin, Nichols' place, makes a general assignment of his business and everything he owns and possesses in that store to this defendant Cory. Austin, Nichols is not involved in this case. The man that makes the complaint and charge in this case is Osborne. He is the man making the

charge. Cory happened to be a credit man in the employ of Austin, Nichols, and Osborne assigned his business, everything he had and possessed in that business, to Cory, with the understanding that Cory was going to pay all the debts and obligations that arose through that business that Osborne had. Time went on. People to whom Osborne owed money approached him and asked him the reason why they were not receiving their money. Osborne sent them to Cory; and from 1920 up to this very date there has never been an accounting to Osborne, and from the testimony which will be adduced here you will see from the mouths of the witnesses that a man who was a clerk in the employ of Osborne collected moneys for this man Cory that were due to Osborne from people to whom Osborne had sold goods, in the neighborhood of $800, and Cory received that. We will show that there were goods, wares and merchandise in the store at the time the assignment went into effect of about $4,500. In all Cory received between $5,000 and $6,000 and the debts and obligations against the business at the time were only about $1,500 in all, and Cory never even paid them; and we will prove to your satisfaction that this business was turned over for the purpose of Cory paying these people these debts, and up to this very day there has never been an accounting." Upon the close of this address, and before any witness was called by the People, the attorney for the defendant made the following motion: " If the court please, I move to dismiss the first count of the indictment on the ground of failure to show facts sufficient to constitute the crime of larceny by false pretenses and misrepresentation. I move to dismiss the second count on the opening of the district attorney, in that in his opening it appears that he proposes to prove that the defendant committed the crime of larceny by embezzlement, whereas the count alleges common-law form of larceny." The indictment is in two counts as follows: First count: " The Grand Jury of the County of Kings by this indictment accuse the defendant of the crime of grand larceny in the first degree, committed as follows: ' The defendant, Albert B. Cory, in the County of Kings on or about the 20th day of January, 1920, with intent to fraudulently cheat and defraud one Edwin D. Osborne and certain creditors then existing of the said Edwin D. Osborne, to wit, Heinz & Co., Washburn-Crosby & Co., Austin, Nichols & Co. and William Broghart and others whose names are to the grand jury unknown, and to deprive them of the goods, moneys and property hereinafter set forth and to appropriate the same to the use of him, the said Albert B. Cory, did then and there feloniously, unlawfully, knowingly and designedly, falsely pretend and represent to the said Edwin D. Osborne that he, the said Albert B. Cory, would dispose

of the goods and chattels belonging to the said Edwin D. Osborne and located in his grocery store at No. — Fulton street, in the Borough of Brooklyn, County of Kings, City and State of New York, together with moneys to be collected by the said Albert B. Cory, from persons indebted to the said Edwin D. Osborne and from the proceeds of said sale of the aforesaid goods and chattels, and with the moneys so collected from the debtors hereinafter mentioned to pay to the creditors of the said Edwin D. Osborne the sums then owing by the said Edwin D. Osborne to his creditors. And the said Edwin D. Osborne then and there believing the said false pretenses and representations so made as aforesaid by the said Albert B. Cory was induced by reason of the false pretenses and representations, so made as aforesaid, to execute and did then and there execute and deliver to the said Albert B. Cory a certain instrument in writing whereby the said Edwin D. Osborne bargained and sold and conveyed to the said Albert D. Cory the goods, chattels, stock and fixtures then belonging to him in his store at No. — Fulton street, in the Borough of Brooklyn, City and State of New York, which said goods, chattels, stock and fixtures were worth approximately the sum of forty-five hundred ($4,500) dollars. And the said Albert B. Cory did then and there designedly receive and obtain the said valuable goods and chattels, moneys, personal property and effects hereinbefore set forth and described of the said Edwin D. Osborne by means of the false pretenses and representations aforesaid, together with the collection of the debts owing to the said Edwin D. Osborne, amounting to about eight hundred ($800) dollars, by means of the false pretenses and representations aforesaid and with intent feloniously to cheat and defraud the said Edwin D. Osborne, and his creditors, above set forth, of the said moneys, personal property and effects hereinbefore set forth and described, and to deprive them of the same, and to appropriate the same to the use of him, the said Albert B. Cory.  Whereas, in truth and in fact, the said Albert B. Cory did not pay to the creditors of the said Edwin D. Osborne from the moneys and the proceeds of the goods and chattels herein mentioned, all of which he, the said Albert B. Cory, then and there well knew; and whereas, in truth and in fact, the pretenses and representations so made as aforesaid, by the said Albert B. Cory to the said Edwin D. Osborne, was and were in all respects utterly false and untrue, as the said Albert B. Cory then and there well knew, and so the grand jury aforesaid do say that the said Albert B. Cory did, on or about the 20th day of January, 1920, in the manner and form and by the means aforesaid, steal, take and carry away the proceeds of the sale of the goods and chattels heretofore mentioned, and the said eight hundred ($800)

County Court, Kings County, March, 1925. [Vol. 124

dollars collected, as heretofore stated, against the form of the statute in such case made and provided, and against the People of the State of New York and their dignity.' Second count: The Grand Jury of the County of Kings, by this indictment, accuse the defendant of the crime of grand larceny in the first degree, committed as follows: ' The defendant on or about the 20th day of January, 1920, in the County of Kings, stole and took from the possession of Edwin D. Osborne the following property owned by him, of the value stated, respectively: Goods, chattels, stock and fixtures of the value of approximately forty-five hundred ($4,500) dollars and eight hundred ($800) dollars in money, with intent to deprive the owner thereof, and of the use and benefit thereof, and to appropriate the same to the use of the defendant.' " The first count is modeled after the form of indictment in *People* v. *Laurence* (137 N. Y. 517, 521). There the defendant is charged with feloniously, falsely and fraudulently pretending *that if a* certain person would permit him to have the *possession* of a certain thing that he would have certain changes made therein and return the same to said person so changed and that the said person then and there believing the said false pretenses and representations, *and being deceived thereby*, was induced by reason of the said false pretenses and representations to deliver and did deliver said certain thing to the defendant, who did then and there feloniously receive said thing by means of said false pretenses and representations, with intent to deprive said certain person feloniously and of the use and benefit thereof and appropriate the same to his own use; that such pretenses and representations were utterly false and untrue; that he did not have the changes made, did not intend to have them made and did not return the certain thing and did feloniously steal, take and carry away the said thing, etc. But the situation in the *Laurence* case is different than in the instant case. There the defendant by certain false pretenses, *intending at the time to appropriate the chattels to his own use, obtained possession of them* from the owner for a *special purpose*, and that he did subsequently convert and appropriate the same to his own use. There the title did not pass, but possession only. It was a larceny, pure and simple. In the instant case the defendant took title to the goods and chattels and the uncollected debts for the benefit of creditors, for, as the indictment says, there was executed and delivered to the defendant " a certain instrument in writing whereby the said Edwin D. Osborne bargained and sold and conveyed to the said Albert B. Cory the goods, chattels, stocks and fixtures," etc., and that he received the same and did not pay over the money and proceeds thereof to the creditors, etc., and stole the same.

The defendant is an assignee for creditors, holding for their benefit, and abusing his trust. He is charged with the intent to steal formed before entering upon his trust and with falsely and fraudulently representing that he would be honest and thereby inducing the assignment to him. An assignee for creditors is a trustee. His obligations are those which appertain to voluntary trustees not acting gratuitously. (*Matter of Cornell*, 110 N. Y. 351.) He took *title* as trustee under a *promise* to honestly and faithfully administer his trust. His promise to so execute the trust is not a false or fraudulent pretense, it would be implied in any event if not made orally or in writing, and is promissory only and will not sustain a criminal charge of obtaining money or property by false pretenses. (*Ranney* v. *People*, 22 N. Y. 413; *People* v. *Blanchard*, 90 id. 314; *People* v. *Miller*, 169 id. 339; *People* v. *Majorana*, 155 App. Div. 431; *People* v. *Hart*, 35 Misc. 182.) If the possession of property is obtained by fraud, and the owner intends to part with his *title*, as well as his possession, the offense is that of obtaining money by false pretenses, provided the means by which they are acquired are such as in law are false pretenses. (*Commonwealth* v. *Barry*, 124 Mass. 325.) Viewed as an indictment for obtaining money by a false pretense the count does not set forth any material, false statement concerning any existing fact, or any fact, present or past. If there be any *false* statement whatever it is promissory in nature and character. For the reasons stated, I find that the first count of the indictment does not set forth facts sufficient to constitute the crime of obtaining property by false pretenses or misrepresentation. This count is accordingly dismissed. So far as the second count is concerned, the learned district attorney sets forth in his opening address to the jury the theory and detail of his case, and goes as far as to say that title passed under the general assignment to the defendant. He was thereupon authorized to sell the chattels and give title thereto, to collect debts and give acquittances therefor, and it is further charged that he did so. The second count of the indictment in the common-law form charging larceny could not be sustained by proof from the owner that such general assignment was induced by false and fraudulent representations. (*Zink* v. *People*, 77 N. Y. 114; *People* v. *Dumar*, 106 id. 502; *People* v. *Miller*, 169 id. 339, 352.) Proof of the commission of the crime of obtaining money by false pretense, which constitutes statutory larceny, will not authorize a conviction under an indictment charging common-law larceny. (*People* v. *Dumar*, 106 N. Y. 502; *Loomis* v. *People*, 67 id. 322; *People* v. *Cohen*, 148 App. Div. 205.) Admissions of counsel are conclusive, made either by the prosecuting officer or the counsel

for the accused, and the same rule obtains in criminal as well as civil cases. (*People* v. *Hovell*, 109 Misc. 510; Abb. Tr. Br. [2d ed.], 405.) In *Garrison* v. *McCullough* (28 App. Div. 467, 468) Mr. Justice CULLEN, writing for the Appellate Division in this department, said: " The first complaint of the appellant is as to the practice adopted at the trial, the dismissal of the complaint on the opening of counsel. As a rule, this practice is not to be approved, but there are cases in which the court is not only empowered to adopt this course, but the course is entirely proper. (*Oscanyan* v. *Arms Co.*, 103 U. S. 261; *Ward* v. *Jewett*, 4 Robt. 714.) Undoubtedly, the counsel is not to be held in his opening to strict accountability for faults, either of commission or of omission, or for making unguarded admissions, or failing to state every fact necessary to make out a cause of action. We suppose that in almost every case which is not determinable by a single central fact, the party, if he so requests, should be allowed to offer all his evidence before submitting to a ruling by the court on its sufficiency. But when the facts lie within a narrow compass, sharply defined and not giving rise to conflicting inferences, we see no reason why the court, in the absence of protest by counsel, may not dispose of the case upon the assumption that the facts proved will be as stated, and thus avoid loss of time in hearing the evidence." In *Denenfeld* v. *Baumann* (40 App. Div. 502, 504) the court said: " In the statement of counsel to the jury, the allegations of the complaint respecting the cause of the accident and the relation of Lyman thereto, seem to have been entirely abandoned. * * * It will be observed that there was nothing claimed nor suggested in the way of proof against Mr. Lyman to bear out any one of the allegations of the complaint concerning negligence attributable to him. * * * Dismissals of complaints upon the opening of counsel are not to be encouraged, but, as was said in *Garrison* v. *McCullough* (28 App. Div. 468), there are cases in which the court is not only empowered to adopt that course, but such course is entirely proper. (*Oscanyan* v. *Arms Company*, 103 U. S. 261; *Ward* v. *Jewett*, 4 Robt. 714.) It would have been in this case a useless consumption of time to continue a trial against a defendant who could not by any possibility be held liable on the proof to which counsel declared in substance he would confine himself." Were the trial to be permitted to proceed, the necessary disposition at the close of the People's case would be a direction for the defendant. Accordingly the motion for dismissal of the second count of the indictment upon the opening of the district attorney and the indictment itself is granted. The district attorney is hereby given leave to submit this case to another grand jury under section 1302 of the Penal Law or otherwise as he may be advised.